## UNITED STATES DISTRICT COURT
District of New Jersey

CHAMBERS OF
**JOSE L. LINARES**
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & U.S. COURTHOUSE
50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

May 23, 2005

## LETTER-OPINION & ORDER

James V. Bashian
Law Office of James V. Bashian, P.C.
Fairfield Commons
271 Route 46 West
Suite F207
Fairfield, NJ 07004

Olimpio Lee Squitieri
Squitieri & Fearon, LLP
13 James Street
Morristown, NJ 07960

Gary S. Graifman
Kantrowitz, Goldhamer & Graifman, Esqs.
210 Summit Avenue
Montvale, NJ 07645

Edward B. Meredith
Meredith, Meredith & Chase, Esqs.
109 South Warren Street
Trenton, NJ 08608

David M. Taus
Law Offices of Francis J. Devito
661 Main Street
Hackensack, NJ 07601

Jennifer A. Sullivan
Shalov Stone & Bonner LLP
163 Madison Ave., P.O. Box 1277
Morristown, NJ 07962

Joel M. Silverstein

Stern & Kilcullen
75 Livingston Ave.
Roseland, NJ 07068

Kevin J. McKenna
Gibbons, Del Deo, Dolan, Griffinger & Vecchione, PC
One Riverfront Plaza
Newark, NJ 07102

James N. Benedict
Clifford Chance US LLP
200 Park Avenue
New York, NY 10166

      Re:    **Benak, et al. v. Alliance Capital Management L.P., et al.**
               **Civil Action No.: 01-CV-5734 (JLL)**

Dear Counsel:

### Introduction

      This matter is before the Court on the motion of defendants Alliance Capital Management L.P. ("Alliance") and Alfred Harrison to dismiss plaintiff Jaffe's First Amended Verified Shareholders' Derivative Complaint. The Court has considered all submissions in support of and in opposition to the motion. There was no oral argument. See Fed. R. Civ. P. 78.

### Background

      Plaintiff Lawrence E. Jaffe Pension Plan, Lawrence E. Jaffe Trustee U/A 1198 ("Jaffe") brings this shareholders' derivative action on behalf of the Alliance Premier Growth Fund ("Fund"). Jaffe "seeks to recover ... the losses occasioned by Defendants' breach of fiduciary duty, misrepresentations and omissions concerning the Fund's highly touted and repeatedly publicly represented prudent investment objectives and policies, specifically, Defendants' decision, contrary to its represented policy, to direct hundreds of millions of dollars into the speculative common stock of Enron Corporation." (First Am. V. S'holders' Derivative Compl. ¶ 2 ("Jaffe Compl.").) The Jaffe Complaint contains three counts. The first alleges violations of Section 36(a) of the Investment Company Act of 1940 ("ICA"), 15 U.S.C. § 80a-35(a). The second and third allege State law claims of negligence and negligent misrepresentation, respectively.

      Jaffe failed to make a demand upon the Fund's board of directors requesting that the latter pursue a remedy for the purported shareholder grievance concerning Enron. (Jaffe Compl. ¶¶ 80-

95.) Defendants now move to dismiss the Jaffe Complaint for that failure. They also move to dismiss on the grounds that Section 36(a) does not furnish a private cause of action, and that the Jaffe Complaint has failed to allege "personal misconduct" on the part of defendants, as required by Section 36(a).

## Discussion

Federal Rule of Civil Procedure 23.1 provides in relevant part:

> In a derivative action brought by one or more shareholders ... to enforce a right of a corporation ..., the corporation ... having failed to enforce a right which may properly be asserted by it, the complaint shall ... allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors ... and the reasons for the plaintiff's failure to obtain the action or for not making the effort.

If a plaintiff demonstrates the existence of facts that would render futile such efforts to obtain action from the corporation's directors, this demand requirement may be excused. See, e.g., Garber v. Lego, 11 F.3d 1197, 1200-01 (3d Cir. 1993). This exception to Rule 23.1 and comparable state rules is often called the futility exception to demand, and its scope varies from state to state.

Alliance is a Maryland corporation (Jaffe Compl. ¶ 7), and Maryland's law of demand futility thus applies. Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 108-09 (1991). The controlling law in this respect is Werbowsky v. Collomb, 362 Md. 581 (2001). Werbowsky, finding the futility exception to be "a very limited exception," held that demand may be excused

> only when the allegations or evidence clearly demonstrate, in a very particular manner, either that (1) a demand, or a delay in awaiting a response to a demand, would cause irreparable harm to the corporation, or (2) a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule.

Id. at 620 (emphasis added). Applying this standard to the facts before it – the plaintiffs had asserted that all the directors were conflicted owing to their lucrative fees as board members, and that six directors were conflicted as a result of their membership on the boards of other companies that did business with the subject corporation – Werbowsky found that demand was not excused. See id. at 622.

Here, Jaffe argues that the demand requirement should be excused. Specifically, it contends that, because the Fund stipulated to file an answer within ten days of the Court's denial

of the instant motion, the Fund's directors are "neutral" and do not oppose this action. Such neutrality, Jaffe asserts, is sufficient to render the demand requirement inapplicable. See Kaplan v. Peat, Marwick, Mitchell & Co., 540 A.2d 726, 731 (Del. 1988).

This argument is without merit. The stipulation Jaffe submits as evidence of the Fund's neutrality in this action is nothing more than an agreement between Jaffe and the Fund, ratified by Court order, to allow the Fund to delay filing an answer until after disposition of this motion. (See Hedges, J., Order of 1/26/04.) As counsel for the parties, being experienced litigators, are aware, these types of adjournments, stays, and the like are frequently employed for efficiency and cost-saving purposes. Indeed, defendants have submitted for the Court's consideration a letter, sent to Jaffe's counsel by the Fund's former counsel in response to Jaffe's opposition brief, which squarely contradicts Jaffe's neutrality argument. The letter indicates that counsel for the Fund rejected Jaffe's counsel's request to insert language in the stipulation concerning the Fund's neutrality. (Letter from Scott to Fisher of 2/26/04, at 1.) This letter further represents that "the Fund asked for the Stipulation in order to avoid incurring significant expenses responding to a complaint that ultimately may be dismissed by the Court." (Id.) The representations set forth in this letter are perfectly consistent with the boilerplate language in the parties' stipulation – which operates merely to create a timetable for responsive pleading – and perfectly inconsistent with Jaffe's neutrality contention.

Additionally, while it appreciates that the Delaware Supreme Court, in Kaplan, 540 A.2d at 731, held that a corporate board's position of neutrality excuses demand, the Court is not persuaded that this holding comports with Maryland law. First, as discussed, Werbowsky held that demand may be excused "only" when a request would cause irreparable harm to the corporation, or when a majority of directors is conflicted. 362 Md. at 620. Board neutrality is not listed as a basis for excusing demand. Second, given that Werbowsky identified the purposes of pre-suit demand to include "meaningful pre-litigation alternative dispute resolution" and avoidance of "extensive and expensive judicial wrangling," id at 619, it is difficult to see how accepting a board's neutrality (after commencement of litigation) as a cognizable exception to Rule 23.1's demand requirement does anything but frustrate these laudable aims. The instant motion is striking evidence of this. Had Jaffe complied with Rule 23.1, it would have either prompted the action it sought or been able to present to this Court for review the basis for the Fund's refusal to act. See id. Instead, the parties are now, years into this civil action, "wrangling" before the Court over issues concerning the nature and legal significance of the Fund's current litigation posture. Id. Third, if the board's hostility to a derivative suit is insufficient to excuse a plaintiff's failure to make a demand, see id. at 618, the Court is unable to discern why neutrality would not be as well. The demand requirement is less about the board's ex post facto state of mind concerning a suggested course of action than it is about the board's control of corporate governance. See id. at 600-01, 619. The board must be given the "opportunity to consider, or reconsider, the issue in dispute" before legal action is taken on behalf of the very entity the board controls. Id. at 619.

As the neutrality argument is the only one marshaled by Jaffe,[1] defendants' motion is GRANTED for Jaffe's failure to make demand on the Fund's board as required by Rule 23.1. The Court declines to consider defendants' statutory arguments.

## Conclusion

For the foregoing reasons, defendants' motion is GRANTED.[2]  Jaffe is dismissed from this action.

SO ORDERED.

/s/ Jose L. Linares
United States District Judge

---

[1] In its opposition brief, Jaffe declined to pursue the argument advanced in its Complaint, namely, that many of the Fund's directors are conflicted in light of their memberships on the boards of other Alliance funds and the lucrative compensation those directors receive therefrom. (Jaffe Compl. ¶¶ 80, 82-84.)  This argument also fails. See Werbowsky, 362 Md. at 618 (rejecting "generalized or speculative allegations of conflict" and the amount of director compensation as excuses for failure to make demand); Krantz v. Prudential Inv. Fund Mgmt., LLC, 77 F. Supp. 2d 559, 562-64 (D.N.J. 1999) (directors are not "interested" under the ICA simply because they receive considerable compensation).

[2] This entire action is derivative. (See Jaffe Compl. ¶¶ 2, 97, 107, 111.)  Jaffe therefore lacks standing to pursue either its ICA or State law claims.